Todd Blanche
Deputy Attorney General of the United States
Eastern District of Washington
Laurel J. Holland
Assistant United States Attorney
825 Jadwin Avenue
Richland, WA, 99352
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 0 5 2026

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 4:24-CR-6008-MKD |
| Plaintiff, | Plea Agreement |
| v. | Fed. R. Crim. P. 11(c)(1)(C) |
| ANDREW STEVEN OTTO, | |
| Defendant. | |

Plaintiff, United States of America, by and through Laurel J. Holland, Assistant United States Attorney for the Eastern District of Washington, and Defendant, Andrew Steven Otto ("Defendant"), both individually and by and through Defendant's counsel, Serguel Akiti and Randi L. Johnson, agree to the following Plea Agreement.

1.    Waiver of Indictment

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States in an Information.

//

//

PLEA AGREEMENT - 1

2.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Counts 1, 2, and 3, of the Information filed contemporaneously with this Plea Agreement, which charge Defendant with two counts of Production of Child Pornography (Counts 1 and 2), in violation of 18 U.S.C. § 2251(a), a Class B felony, and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), a Class C felony.

Defendant understands that the following potential penalties apply to Counts 1 and 2, Production of Child Pornography:

a.    a term of imprisonment of not less than 15 years and up to 30 years;

b.    a term of supervised release of not less than 5 years and up to a lifetime;

c.    a fine of up to $250,000;

d.    an assessment of no more than $50,000 pursuant to 18 U.S.C. § 2259A(a)(3);

e.    restitution;

f.    a $100 special penalty assessment per count; and

g.    sex offender registration.

Defendant understands that the following potential penalties apply to Count 3, Possession of Child Pornography:

a.    a term of imprisonment of no more than 20 years;

b.    a term of supervised release of not less than 5 years and up to a lifetime;

c.    a fine of up to $250,000;

d.    an assessment of no more than $17,000 assessment pursuant to 18 U.S.C. § 2259A(a)(3);

e.    restitution;

PLEA AGREEMENT - 2

f.    a $100 special penalty assessment; and

g.    sex offender registration.

3.    Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

4.    The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 3

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

5.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 4

6.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

     a.    the right to a jury trial;

     b.    the right to see, hear and question the witnesses;

     c.    the right to remain silent at trial;

     d.    the right to testify at trial; and

     e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    Admissibility of Facts and Prior Statements

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410

PLEA AGREEMENT - 5

with regard to any facts Defendant admits and/or any statements Defendant makes in court.

8. Elements of the Offense

*Production of Child Pornography (Count 1), Minor 1*

The United States and Defendant agree that in order to convict Defendant of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), the United States would have to prove the following beyond a reasonable doubt.

    a. *First,* beginning on or before November 28, 2023, and continuing through on or about December 17, 2023, Minor 1 was under the age of eighteen years;

    b. *Second,* Defendant employed, used, persuaded, induced, enticed or coerced Minor 1, who was located in the Eastern District of Washington, to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

    c. *Third,* the visual depiction was actually transported or transmitted across state lines or in foreign commerce using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

*Production of Child Pornography (Count 2), Minor 2*

The United States and Defendant agree that in order to convict Defendant of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), the United States would have to prove the following beyond a reasonable doubt.

    a. *First,* beginning on or before November 1, 2023, and continuing through on or about May 15, 2024, Minor 2 was under the age of eighteen years;

    b. *Second,* Defendant employed, used, persuaded, induced, enticed or coerced Minor 2, who was located in the Northern District of

PLEA AGREEMENT - 6

Illinois, to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

c. *Third*, the visual depiction was actually transported or transmitted across state lines or in foreign commerce using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

*Possession of Child Pornography (Count 3)*

The United States and Defendant agree that in order to convict Defendant of Production of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), the United States would have to prove the following beyond a reasonable doubt.

a. *First*, on May 16, 2024, in the Western District of Michigan, Defendant knowingly possessed material that contained visuals depictions of minors engaged in sexually explicit conduct, including minors who had not attained twelve years of age;

b. *Second*, Defendant knew each visual depiction contained in the material was of a minor engaged in sexually explicit conduct;

c. *Third*, Defendant knew that production of such visual depictions involved the use of a minor(s) engaged in sexually explicit conduct; and

d. *Fourth*, the visual depictions had been transported using any means or facility of interstate commerce in or affecting interstate commerce or foreign commerce by any means, including by computer.

9. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 7

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

### *Initial Report by Minor 1's Mother*

On December 17, 2023, a mother in the Eastern District of Washington reported to the Kennewick Police Department (KPD) that she had located concerning communications between her 14-year-old daughter (Minor 1) and a 24-year-old by the name of "Drew" on Minor 1's cellular phone. "Drew" was communicating with Minor 1 using phone number (906)-280-9218 and Snapchat, each of which was a means of communication in and affecting interstate and foreign commerce. The communications included text and image files. The mother also advised law enforcement that she had located communications in which Minor 1 had sent images of her unclothed vaginal area to an unknown account on Snapchat. Finally, the mother had also located communications between Minor 1 and another phone number, allegedly belonging to an "ex-girlfriend of Drew" wherein the "ex-girlfriend" threatened to post the images depicting Minor 1's unclothed genitals online if Minor 1 did not continue to send the more images of Minor's unclothed genitals on demand to the "ex-girlfriend's" phone number. The "ex-girlfriend" threatened to kill "Drew" and Minor 1's mother if Minor 1 did not continue to send the photos. The "ex-girlfriend" also sent Minor 1 a photo of Minor 1's neighborhood and advised that "she" knew where Minor 1 went to school. Minor 1's mother provided Minor 1's cellular phone to KPD officers.

KPD officers ran phone number (906)-280-9218 through a law enforcement database. The database listed Defendant Andrew Steven Otto as the subscriber associated with the phone number, as well as Defendant's residential address in Michigan.

PLEA AGREEMENT - 8

The case was adopted by the Southeast Regional Internet Crimes Against Children Task Force/Homeland Security Investigations (SER-ICAC). SER-ICAC Task Force Officer William Dramis (TFO Dramis) was assigned to the case. He confirmed through another law enforcement database that phone number (906)-280-9218 was assigned to Defendant. He also sent account preservation letters to Snapchat number for Minor 1 and Defendant's Snapchat accounts.

### *Records Returns from Minor 1 and Defendant's Snapchat Accounts*

TFO Dramis applied for, and was granted, search warrants for Minor 1 and Defendant's Snapchat accounts. The records return for Defendant's Snapchat account (username 'jfrunner') included communications between Minor 1 and Defendant beginning on November 29, 2023, and continuing through December 15, 2023. During the communications, Defendant represented himself to be a 15-year-old boy to Minor 1. Below are some of the initial communications between Defendant and Minor 1:

**November 29, 2023**
MINOR 1: How old are you
Defendant: 15
MINOR 1: You look older than your age but you have better probability of getting a job atleast
Defendant: True
MINOR 1: Yup
Defendant: Idk what do you think of me
MINOR 1: I think your eyes are very nice
Defendant: Deep blue
MINOR 1: Looks nice
Defendant: I'm sorry
MINOR 1: For why
Defendant: I understand if you'd wanna go
MINOR 1: Why would I wanna go?
Defendant: Cause that's what everybody else does!

Defendant requested a picture of Minor 1. Minor 1 sent an image of her face and Defendant told her she was beautiful. In the communications that followed, Defendant asked Minor 1 how school was going and if Minor 1 was going to try to

PLEA AGREEMENT - 9

work towards obtaining her driver's license. Defendant also inquired if Minor 1 was in 10th grade and offered to send her money. Minor 1 inquired why he would offer to do so; Defendant replied "Idk".

During later communications, Defendant inquired where Minor 1 lived and informed her that he lived in Escanaba, Michigan. Minor 1 replied that she lived in a specific area in the Eastern District of Washington in Washington state. Defendant also advised that his birthday was April 2nd. He informed Minor 1 that he wanted to date her and "could treat [her] right", "like a queen." Minor 1 advised that she had never dated anyone and did not know what it was like. Defendant inquired if Minor 1 would swap phone numbers. Thereafter, Minor 1 and Defendant provided their respective phone numbers; Defendant provided phone number 906-280-9218.

Defendant continued to pursue Minor 1 via text message and Snapchat message. He asked if she wanted to run away together, suggesting Minor 1 get a bus ticket. Defendant also began requesting nude images from Minor 1, as described below.

**December 5, 2023**
Defendant: Would you wanna send pictures?
MINOR 1: Ok sure
Defendant: ðŸ˜â˜ºï¸
Defendant: Do you want me ask?
MINOR 1: Ask what
Defendant: Like what type of pictures?
MINOR 1: I was just gonna send my face
MINOR 1: Were you thinking of smth else?
Defendant: Yea I had something else in mind lol
MINOR 1: Okey then say what you had in mind
Defendant: Like ummâ€¦nude
MINOR 1: Hmmm maybe once weve know each other for longer
Defendant: Please hun
MINOR 1: Once we know each other for longer
MINOR 1: Then I'll maybe do it
Defendant: Ohh okay
Defendant: Iâ€™m sorry ðŸ˜ž

PLEA AGREEMENT - 10

MINOR 1: Its perfectly fine

MINOR 1: You don't need to apologize

Defendant: It's just your super beautiful

Defendant: An I wanted to see all of you

**December 7, 2023**

Defendant: Can I see you boo

Defendant: Can you do a sexy one?

MINOR 1: But aren't you supposed to be cleaning?

Defendant: I am lol

MINOR 1: So wouldn't it be weird for me to send you that typa photo while ur cleaning?

Defendant: Not really

Defendant: I'm all here by myself

MINOR 1: Oh ok well you should focus on cleaning and then maybe later we can talk about it

Defendant: Please hun

MINOR 1: What kinda picture were you thinking of

Defendant: Surprise me

Defendant: But it's gotta be sexy though only rule lol

**December 11, 2023 (Minor 1 is at school)**

Defendant: Ok. Here's whatcha gonna do babe. Once you go to the bathroom stall take a deep breath and don't panic about time. Go to a stall lock the door pull your pants down and sit down to make it look like you're using itâoeOEðŸ ¼. Then whatcha gonna do is lift up both shirts were I see you bra

MINOR 1: Ok hold on

Defendant: And take a sexy picture

Defendant: And then lift up bra for me hun and take a picture sexy picture down there as well

MINOR 1: Arnt you at like work?

Defendant: No I'm home

MINOR 1: Oh well can I only show you sum cleavage bc I'm at school and I wanna do things quick

Defendant: Can you go all the way hun it'll be quick

Defendant: 5min tops

MINOR 1: Wdym all the way

Defendant: Like lift your show your bra snap a pic then lift your bra snap a pic and snap a pic down there

PLEA AGREEMENT - 11

MINOR 1: But that's nudes and I'm not wanting to do those kinda pictures yet

Defendant: Please hunnyðŸ¥°

MINOR 1: I don't want to take nudes

Defendant: For me ðŸ¥°

MINOR 1: I'm not taking nudes at school

Defendant went on to say that he loved Minor 1 and he needed nude pictures of her so that he did not disrespect their relationship by going to a pornography website. He informed Minor 1 that he was in incredible pain.

On December 15, 2023, Minor 1 informed Defendant that his "ex-girlfriend" kept texting her. Minor 1 asked if Defendant if he had lied about his age. Minor 1 shared a screenshot of her conversation with Defendant's purported ex-girlfriend. The "ex-girlfriend" messaged Minor 1 that she would bite Minor 1's "pussy". Defendant advised Minor 1 that his "ex-girlfriend" was threatening him, and Minor 1 must take a picture with her legs spread.

Defendant: She's threatening me

Defendant: please

MINOR 1: Threatning to do what??

Defendant: Everything

MINOR 1: Like?

Defendant: Please

Defendant: She's counting down

MINOR 1: Can I take a picture before just above instead of spreading legs?

MINOR 1: Ask her that

Defendant: no

MINOR 1: What's a no

MINOR 1: Oh ok

Defendant: You must do spread your legs

MINOR 1: Will you save it

MINOR 1: ??

MINOR 1: Can't you block her or smth

Defendant: Doesn't matter how hard I try to block her she always finds a way

MINOR 1: So I just send picture of a pussy?

MINOR 1: ?

Defendant: Yes

PLEA AGREEMENT - 12

Defendant: And she's saying no half assing it either FML
MINOR 1: Oh
MINOR 1: Can it be someone else's pussy?
Defendant: No yours
MINOR 1: Is that what she said?
Defendant: Yes
Defendant: Iâ€™m feeling really lit headed
Defendant: please hun
MINOR 1: What is she gonna do with the picture
Defendant: Nothing
MINOR 1: Ok so it's gonna be deleted afterward?
Defendant: No I have to save it……….
MINOR 1: Can you delete that picture from your camera roll
MINOR 1: She wants a retake
MINOR 1: Bc I drew on kt
MINOR 1: It
MINOR 1: Apparently i cant draw on my leg
Defendant: Ok
MINOR 1: There
MINOR 1: What'd she say to you
MINOR 1: She said she said smth to you
Defendant: She said it better be spread opened like close up and your hand/fingers opening it up
MINOR 1: Tell her I did that
Defendant: Closer
MINOR 1: Wdym
Defendant: Like move your phone closer to your pussy

TFO Dramis found the communications between Minor 1 and Defendant's purported ex-girlfriend in the records from Minor 1's Snapchat return. The communications began on or about December 14, 2023. Ultimately, the investigation revealed that the purported ex-girlfriend was Defendant pretending to be his former girlfriend who lived in another state hundreds of miles from Defendant. Records obtained from electronic service providers, including Snapchat and Charter communications, demonstrated that Defendant's phone number was the phone number associated with the "ex-girlfriend's" Snapchat account and the IP address utilized by Defendant's Snapchat account during the

PLEA AGREEMENT - 13

communications with Minor 1 was the IP address assigned to Defendant's residence at the time.

The "ex-girlfriend"[1] messaged Minor 1 that Defendant was 24 years old and caring for his dying mother. The "ex-girlfriend" informed Minor 1 that Defendant was under immense stress and had high blood pressure and that his way of lowering stress was sex. Thereafter, the "ex-girlfriend" told Minor 1 to "Show him your pussy...Or else." The "ex-girlfriend" continued to threaten Minor 1. The threats and aggressive demands for images of Minor 1's unclothed genitals were lengthy. Below is a sample of the communications sent by the "ex-girlfriend".

> Ex-Girlfriend: YOURE STALLING
> Ex-Girlfriend: DO IT NOW
> MINOR 1: I gotta turn on my light so hold on
> Ex-Girlfriend: Ok
> MINOR 1: How tf do you even take one of these pictures like I'm confused on what the picture entails
> Ex-Girlfriend: SPREAD YOUR LEGS SNAP THE PICTURE AND OPEN WIDE
> Ex-Girlfriend: DO IT
> MINOR 1: I'm not 15 please don't ask me if this
> MINOR 1: Of*
> Ex-Girlfriend: DO IT
> Ex-Girlfriend: NOW
> MINOR 1: You won't look
> Ex-Girlfriend: NO
> MINOR 1: Ok
> MINOR 1: Can I do a picture of boobs intead
> Ex-Girlfriend: NO
> Ex-Girlfriend: PUSSY NOW DO IT
> Ex-Girlfriend: DO IT
> MINOR 1: Ok hold on
> MINOR 1: You do anything yet??
> MINOR 1: ??
> Ex-Girlfriend: AND HE CAN SAVE NO QUESTION ASKED
> MINOR 1: Are you gonna see it.

---

[1] The communications from Defendant assuming the identity of his ex-girlfriend are indicated as being from "ex-girlfriend" for the ease of the reader.

PLEA AGREEMENT - 14

Ex-Girlfriend: DO IT NOW
Ex-Girlfriend: I TOLD YOU NO I WONT
Ex-Girlfriend: DO IT NOW
MINOR 1: WHY ARE YOU MAKING HIM SEE IT???
MINOR 1: Please just the top
MINOR 1: Can I just do that
MINOR 1: Please
Ex-Girlfriend: NO
Ex-Girlfriend: 9
Ex-Girlfriend: ALL OF IT
Ex-Girlfriend: 8
Ex-Girlfriend: 7
Ex-Girlfriend: 6
MINOR 1: End the counting
MINOR 1: And everything
MINOR 1: Is you there
MINOR 1: ??
MINOR 1: ?
MINOR 1: ?????
MINOR 1: You there?
MINOR 1: Answer me
MINOR 1: ???
MINOR 1: ??
MINOR 1: ??????
MINOR 1: I finished
MINOR 1: I did it
…………..
Ex-Girlfriend: HE TOLD ME ITS A LITTLE BLURRY HARD TO SEE
Ex-Girlfriend: DO IT AGAIN 1341
Ex-Girlfriend: IGNORING ME ARE WE
Ex-Girlfriend: That's a bad idea
Ex-Girlfriend: ANSWER ME NOW
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME

PLEA AGREEMENT - 15

Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
Ex-Girlfriend: ANSWER ME
MINOR 1: What do you need
Ex-Girlfriend: DO IT AGAIN
Ex-Girlfriend: DO IT AGAIN
MINOR 1: I can't rn
MINOR 1: I gotta go to school
Ex-Girlfriend: DO IT AT SCHOOL WHEN YOU GO TO THE BATHROOM
MINOR 1: Why do I gotta do it again
Ex-Girlfriend: BECAUSE I SAID SO
Ex-Girlfriend: SO WHEN YOU GET TO SCHOOL GO TO THE BATHROOM IN ONE OF YOUR CLASSES AN DO IT
MINOR 1: What was wrong with the other picture I sent
Ex-Girlfriend: WHEN YOUR SITTING ON THE TOLIET OPEN YOUR LEGS TAKE 2 PICTURES AND SEND IT TO HIM OR ELSE.

The "ex-girlfriend" continued to message Minor 1 with threats and extortive language through December 16, 2023. The final communications from the "ex-girlfriend" indicated that Defendant was in the hospital because Minor 1 did not send more unclothed vaginal images. The "ex-girlfriend" threatened to have Defendant arrested and to ruin Minor 1's life by posting Minor 1's nudes all over her school's website. The "ex-girlfriend" messaged that she would "STOP ALL THIS HIT ONCE YOUR LIVING WITH HIM."

### Review of Victim's Cellular Phone Extraction

On February 7, 2024, TFO Dramis reviewed a Cellebrite report of Minor 1's phone prepared by Kennewick Police Department Forensic Examiner Brian Pochert (FE Pochert). FE Pochert located texts between Minor 1 and Defendant's phone number, (906)-280-9218. FE Pochert also located text messages from the "ex-girlfriend". The text communications tracked with those detailed above from the "ex-girlfriend's" Snapchat account and included the unclothed images of Minor

PLEA AGREEMENT - 16

1's vaginal area demanded by the "ex-girlfriend" with corresponding date stamps from December 16, 2023.

### *Interview with Minor 1*

TFO Dramis interviewed Minor 1. During the interview, Minor 1 stated that she was in the 9th grade and was now 15 years old. She explained that she had a Snapchat account and that she communicated with a male (Defendant) on the platform who told her he was 15. Minor 1 told Defendant that she was 15. She stated that Defendant had dropped out of school and was a janitor in Michigan. Defendant had wanted her exact address so that he could send her flowers for Christmas, but Minor 1 didn't think that was a good idea. She sent him a general location in the Eastern District of Washington.

Minor 1 described how Defendant wanted pictures of her body. She stated that she took and sent Defendant pictures of herself in a bra and panties, even though she did not want to. The communications Minor 1 and Defendant, to include those where he asked for nude pictures of her body, occurred when she was in her bedroom in her family residence (which is located in the Eastern District of Washington). Minor 1 confirmed that she and Defendant exchanged phone numbers and texted. She explained that she now believed the "ex-girlfriend" was actually Defendant. Minor 1 stated that she never sent the bra and underwear images to anyone but Defendant, but somehow his "ex-girlfriend" had them. Minor 1 stated that she did not want to create the naked pictures but did so because the alleged ex-girlfriend was threatening her. The ex-girlfriend threatened Minor 1 until she sent a vaginal image to Defendant and vaginal images to the ex-girlfriend via text message and/or Snapchat.

### *Additional Minors Located and Identified in Defendant's Snapchat Return*

TFO Dramis located communications between Defendant's "jfrunner" Snapchat profile and an 11-year-old girl (Minor 2) Defendant's Snapchat return. These communications included images depicting Minor 2's unclothed genitals

PLEA AGREEMENT - 17

sent by Minor 2 to Defendant at Defendant's direction.  The communications began on or about November 1, 2023, and continued until December of 2023.  In the initial communications, Minor 2 advised Defendant that she was 11 years old and she did not date people who were more than 15 years of age.  Defendant advised that he was 24 and tried to persuade Minor 2 to date him despite their age difference.  Minor 2 advised that she wanted time to think about it.  During the communications, Defendant told Minor 2 that she was sexy and inquired if she had previously had sex.  Initially, Defendant requested images of Minor 2 grabbing her bare breasts and nude images of her body.  Defendant then progressed to requesting images of Minor 2's unclothed genitals as follows:

**December 17, 2023**
Defendant: Lift your panties
Defendant: ?
Minor 2:  I haven't shaved so…maybe tomorrow
Defendant: That's okay I like hairy pussy
Defendant: ðŸ¥°
Defendant: Hun
Minor 2: ....later baby ,please, for meee
Defendant: can you lift it for daddy
Defendant: Can you be daddies little girl and do it
Minor 2: But I don't wannna..Plsss
Defendant: Show daddy
Minor 2: Do I have to…:(
Defendant: Yes
Minor 2: why
Defendant: Don't you wanna see it
Defendant: Don't you're mouth drools for it
Minor 2: Uhhh - not really…Not trying to be rude
Defendant: Show daddy
Defendant: Come on show daddy…???
Minor 2: I don't wannaaaaaa
Defendant: Show daddy
Defendant: And be a good girl for me
Defendant: I'll buy you Starbucks
Defendant: Let's see your pussy
Defendant: And the stubs
Minor 2: But I don't feel confident

PLEA AGREEMENT - 18

Defendant: For me babyðŸ¥°
Defendant: ðŸ¥°ðŸ¥°
Defendant: ðŸ¥°ðŸ¥°
Defendant: Look at the eyes babe
Defendant: ðŸ¥°ðŸ¥°
Defendant: Please
Defendant: Take off your panties
Minor 1: Fineeee

Minor 2 then sent Defendant an image file depicting her unclothed genitals being spread apart by two fingers. Defendant continued to message Minor 2.

Defendant: Can you you stick your finger in it
Minor 2: Baby..I'm not in the mood rn
Defendant: Do it for daddy
Defendant: Show me your asshole
Minor 2: Baby ..I really don't wanna do this rn
Defendant: Do it
Defendant: Do it
Minor 2: Pls no baby
Defendant: 10
Minor 2: Baby don't do it..
Defendant: 9
Defendant: Hun just a picture
Defendant: You said you do anything for me
lyvidance: Ik.. but this is the one thing I won't..
Defendant: How about more pussy?
Defendant: Hun

Minor 2 sent Defendant another image file depicting her unclothed genitals being spread open. This image was distinct from the image above- Minor 2's genitals were spread open further. Defendant continued to ask for images of Minor 2's unclothed genitals.

Defendant: Can you spread it more open and snap the inside
Defendant: ??
Defendant: Like more of an angle
Defendant: Hun
Defendant: Can you please do that
Defendant: ??â€™
Defendant: Please talk to me

PLEA AGREEMENT - 19

The communications between Defendant and Minor 2 continued. Defendant asked Minor 2 to move in with him and advised that he loved her and cared about her.

### Defendant Indicted in the Eastern District of Washington

On April 16, 2024, a grand jury in the Eastern District of Washington returned a three count Indictment charging Defendant with Attempted Production and Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and Extortion, in violation of 18 U.S.C. § 875(d).

### Identification of Minor 2

TFO Dramis applied for, and was granted, a search warrant for Minor 2's Snapchat account records. TFO Dramis received a records response from Snapchat on April 30, 2024.

Investigators utilized geolocation information provided in Minor 2's Snapchat records return to locate and identify Minor 2. Minor 2 was identified as an 11-year-old child who resided in the Northern District of Illinois. Minor 2 was interviewed by a Forensic Child Interviewer in the Northern District of Illinois. Minor 2 disclosed that around Christmas of 2023, she began communicating with a male named "Drew" or "Andrew" (Defendant) on Snapchat. Defendant claimed he worked with her 20-year-old half-sister. Defendant requested image and video files of Minor 2's bare breasts and vagina, and of Minor 2 masturbating. Minor 2 reported that Defendant would direct her how to position herself and what he wanted in the images and videos. Minor 2 estimated that she sent Defendant 10 image files and 10 video files depicting her bare breasts, unclothed vaginal area and Minor 2 masturbating. Minor 2 also described Defendant sending her image and video files depicting his exposed penis and eventual ejaculation. Minor 2

PLEA AGREEMENT - 20

advised that all of the communications with Defendant, to include the images and videos described above, were sent using the Snapchat application.

***Defendant's Arrest and Execution of Residential Search Warrant in Michigan***

On May 14, 2024, TFO Dramis applied for, and was granted, a federal search warrant for Defendant's residence in Escanaba, Michigan, in the Western District of Michigan.

On May 16, 2024, Defendant was located at his residence in Escanaba, Michigan. Defendant was placed under arrest and transported to a local law enforcement facility. After being advised of, and waiving his *Miranda* rights, Defendant was interviewed by TFO Dramis and SER-ICAC Detective Matthew Nelson. Defendant provided his phone number, 906-280-9218, which was the same phone number he used to communicate with Minor 1. Defendant advised that he had lived at his mother's residence in Escanaba, Michigan.

Defendant admitted that he communicated with Minor 1, who he knew to be 15 years old, using Snapchat. Defendant stated that he asked Minor 1 for pictures of her "pussy." He reported that Minor 1 did not want to sent the images but he made her feel sorry for him and played the victim. Defendant further admitted that he created the "ex-girlfriend" account and contacted Minor 1 using that account. Defendant admitted that his motivation in creating the fake account was to get Minor 1 to send more pictures of her body. He described telling Minor 1 that bad things would happen if she did not create and send images of her unclothed vagina. Defendant also admitted that he directed Minor 1 to take images of her body while she was at school using both Snapchat accounts.

Defendant also admitted that he communicated with Minor 2 using Snapchat despite the fact that she was 11 years old. Defendant also explained that he did the same thing to Minor 2 that he did to Minor 1 when Minor 2 did not want to take the pictures he requested. However, with Minor 2, Defendant created a fake Snapchat profile that he claimed was his sister to communicate with Minor 2.

PLEA AGREEMENT - 21

Defendant admitted that officers would find child pornography on two cellular phones seized from his residence. He described categorizing the minors by name. Defendant stated that he had deleted his pictures of Minor 1, but there would be child pornography depicting two other minors, Minor 2 and Minor 3, who lived in New York.

### *Forensic Examination of Electronic Devices and Review of Content*

A number of electronic devices were located in Defendant's bedroom and other areas of his mother's residence. The devices were seized and placed into evidence for processing. Three of the phones seized from the residence belonged to Defendant and were determined to contain child pornography, specifically a green iPhone (Serial Number F63YJ6K4MR), a black iPhone (Serial Number FFNHHRA7PLJM) and a black Samsung Galaxy phone (No. 352319151844808).

Investigators located Defendant's Snapchat communication strings with Minors 1 and 2 and their respective phone numbers saved in his device. They also located the image files depicting Minor 1's unclothed genitals and Minor 2's bare breasts and genitals as well as videos of Minor 2 masturbating. In some of the videos Minor 2 is using a hairbrush to penetrate her vagina and asks Defendant if she can eat after she sends the video to him. Investigators also located multiple additional communication strings between Defendant and girls who identified themselves to be minors. Defendant requested "live" pictures and sexy pictures from these minors.

Finally, investigators located a communication string wherein Defendant solicited child pornography via text message from another person who was offering it for sale. Defendant received a video depicting a prepubescent girl, approximately 6 to 8 years of age, who was naked from the waist down, being vaginally penetrated by an adult penis. The girl was crying and in obvious distress and pain.

PLEA AGREEMENT - 22

At all times referenced in the Information, Defendant was physically present in the Western District of Michigan, Minor 1 was physically present in the Eastern District of Washington and Minor 2 was physically present in the Northern District of Illinois. Defendant knew Minor 1 was 14 years at old the time that he coerced her to take images depicting her unclothed genitals. Defendant knew Minor 1 resided in the Eastern District of Washington and that his requests for child pornography, and the images themselves, would travel in interstate commerce via the Internet, a means and facility of interstate and foreign commerce. Defendant knew that Minor 2 was 11 years old at the time that he coerced her to take image and video files depicting her unclothed genitals and masturbatory acts. Defendant knew Minor 2 resided in the Northern District of Illinois and that his requests for child pornography images, and the images themselves, would travel in interstate commerce via the Internet, a means and facility of interstate commerce. Finally, Defendant knowingly possessed image and video files of individuals he knew to be minors on his cellular phones. Defendant knew, and it is true, that those constituted child pornography, as defined by federal law. Defendant knew that the production of those image and video files involved minor children and that those image and video files traveled in interstate and foreign commerce via the internet and a computer.

## 10.   The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Indictment filed on April 17, 2024, which charges Defendant with Production and Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) and Extortion, in violation of 18 U.S.C. § 875(d).

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in

PLEA AGREEMENT - 23

its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

11.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

***Production of Child Pornography (Count 1), Minor 1***

a.    Base Offense Level and Specific Offense Characteristics

The United States and the Defendant agree to the following base offense level and specific offense characteristics as to Count 1, Production of Child Pornography, involving Minor 1.

| **Base Offense Level** | 32 | U.S.S.G. § 2G2.1(a) |
|---|---|---|
| **Specific Offense Characteristics** | | |
| Minor 1 had attained the age of 12 years but not 16 years | +2 | U.S.S.G. § 2G2.1(b)(1)(B) |
| Minor 1 engaged in sexual contact at Defendant's direction | +2 | U.S.S.G. § 2G2.1(b)(2)(A) |
| For the purpose of producing sexually explicit material, Defendant misrepresented his identity to coerce Minor 1 to engage in sexually explicit conduct | +2 | U.S.S.G. § 2G2.1(b)(6)(A) |

***Production of Child Pornography (Count 2), Minor 2***

b.    Base Offense Level and Special Offense Characteristics

The United States and Defendant agree to the following base offense level and specific offense characteristics as to Count 2, Production of Child Pornography, involving Minor 2.

PLEA AGREEMENT - 24

| Base Offense Level | 32 | U.S.S.G. § 2G2.1(a) |
|---|---|---|
| **Specific Offense Characteristics** | | |
| Minor 2 had not attained the age of 12 years | +4 | U.S.S.G. § 2G2.1(b)(1)(A) |
| Minor 2 engaged in sexual acts at Defendant's direction | +2 | U.S.S.G. § 2G2.1(b)(2)(A) |
| For the purpose of producing sexually explicit material, Defendant misrepresented his identity to coerce Minor 2 to engage in sexually explicit conduct | +2 | U.S.S.G. § 2G2.1(b)(6)(A) |

### Possession of Child Pornography (Count 3)

　　c.　　Base Offense Level and Specific Offense Characteristics

The United States and Defendant agree to the following base offense level and specific offense characteristics as to Count 3, Possession of Child Pornography.

| Base Offense Level | 32 | U.S.S.G. §§ 2G2.1(a), 2G2.2(c)(1) |
|---|---|---|
| **Specific Offense Characteristics** | | |
| The offense involved a minor who had not attained the age of 12 years | +4 | U.S.S.G. § 2G2.1(b)(1)(A) |
| The offense involved the commission of sexual contact and sexual acts | +2 | U.S.S.G. § 2G2.1(b)(2)(A) |
| For the purpose of producing sexually explicit material, Defendant misrepresented his identity to coerce minors to engage in sexually explicit conduct | +2 | U.S.S.G. § 2G2.1(b)(6)(A) |

　　d.　　Multiple Count Analysis

Pursuant to U.S.S.G. § 3D1.4, three units are assigned to Counts 1, 2 and 3, resulting in a 4-level increase to the count with the highest offense level.

　　e.　　Dangerous and Repeat Sex Offender Against Minors

The United States and Defendant agree that under Chapter 4, Defendant's offense level is increased by an additional 5 levels because Defendant engaged in a pattern of activity involving prohibited sexual conduct. U.S.S.G. § 4B1.5(b)(1).

//

PLEA AGREEMENT - 25

f.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

      i.    accepts this Plea Agreement;

      ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

      iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

      iv.    provides complete and accurate information during the sentencing process; and

      v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

g.    Agreements Regarding Representations to the Court

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

PLEA AGREEMENT - 26

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v. The United States and Defendant may each respond to any arguments presented by the other;

    vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure,

PLEA AGREEMENT - 27

and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

h.    <u>Venue</u>

Defendant expressly agrees and stipulates his conduct pertaining to Count 2, Production of Child Pornography involving Minor 2, and Count 3, Possession of Child Pornography, constitutes charged conduct for the instant offense, though venue for those offenses lies in the Northern District of Illinois, the Western District of Michigan, and elsewhere. Defendant expressly waives any and all potential venue challenges he may have, in any court, including any United States

PLEA AGREEMENT - 28

District Court, any United States Court of Appeals, and the United States Supreme Court. Defendant expressly agrees that this Court shall fully resolve his case due to his waiver of any and all venue challenges.

       i.    Potential Charges in Other Jurisdictions

The United States Attorney's Office for the Eastern District of Washington has contacted the United States Attorney's Offices for the Northern District of Illinois (USAO-NDIL) and the Western District of Michigan (USAO-WDMI). Both the USAO-NDIL and the USAO-WDMI have agreed not to seek further criminal charges arising from conduct charged in the Information or identified in discovery produced in this case so long as the Defendant abides by the terms of this Plea Agreement and is sentenced in conformance with the terms of this Plea Agreement.

       j.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

       k.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

12.   Incarceration

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is 300 months (25 years) to 420 months (35 years) in custody, to be followed by a term of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court.

PLEA AGREEMENT - 29

Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 420 months (35 years) or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 300 months (25 years) or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.]

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a

PLEA AGREEMENT - 30

recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing.  In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

13.    Supervised Release

The United States and Defendant each agree to recommend a term of supervised release.  Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

PLEA AGREEMENT - 31

c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

d. Defendant shall report to the Probation Office any and all electronic communications service accounts, as defined in 18 U.S.C. § 2510(15) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. Defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation. The Probation Office is permitted to access and search any accounts using Defendant's credentials pursuant to this condition only when reasonable suspicion exists that Defendant has violated a condition of his supervision and that the accounts to be searched contain evidence of this violation.

e. Defendant shall not have any contact with any victim identified in the charging instrument or discovery in the above-captioned matter.

f. Defendant shall not have any contact with any child under the age of 18 outside the immediate presence of an adult and approved in advance by the Probation Officer. Defendant shall

PLEA AGREEMENT - 32

not have any contact or communications of any kind with any child via telephone, the Internet, or any social media platform. Defendant shall immediately report to the Probation Officer any unauthorized contact with anyone under 18 years old.

g.  Defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, and any personal computing device that Defendant possesses or has access to, including any internal or external peripherals.  This may require temporary removal of the equipment for a more thorough inspection.  Defendant shall not possess or use any data encryption technique or program. Defendant shall purchase and use such hardware and software systems that monitor Defendant's computer usage, if so directed by the Probation Officer.

h.  Defendant shall not reside or loiter within 1000 feet of places where children under the age of 18 congregate, which includes primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, carnivals, recreation centers, and arcades.

i.  Defendant shall not possess or manufacture any sexually stimulating, sexually explicit or sexually oriented material including videos, magazines, photographs, computer generated depictions, or any other matter that depicts "sexually explicit conduct" involving children or adults, as defined by 18 U.S.C. § 2256(2).  Defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, massage parlors, escort services, or strip clubs. Defendant shall not use any sex-related adult telephone number,

PLEA AGREEMENT - 33

Internet access, or social media platform. Defendant shall provide to the Probation Officer all of Defendant's telephone and Internet records to monitor compliance, at the direction of the Probation Officer.

j. Defendant shall register as a sex offender, according to the laws of each state in which Defendant resides, is employed, or is attending school. Defendant shall provide verification of compliance with this requirement to the Probation Officer.

k. Defendant shall complete a sex offender evaluation, which may include periodic psychological, physiological, polygraph, plethysmography testing, and completion of the ABEL assessment, at the direction of the Probation Officer.

l. Defendant shall participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to Defendant's ability.

14.    Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

//

//

PLEA AGREEMENT - 34

15.    Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

- a Rose gold iPhone 6;

- a Black iPhone 7;

- a Teal iPhone 15;

- a Black iPhone SE;

- a Black Samsung Galaxy TracFone;

- a Black and Red Acer laptop Model N20C1;

- a Black Hewlett Packard HP Pavilion laptop;

- a Seagate 1TB external hard drive Model: 1K9AP1502, Serial #: NA9EJTL7 with USB connection cable; and,

- a Black NZXT desktop tower computer Serial #: 37213C03300346

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in these assets.

Defendant acknowledges that the assets listed above, which Defendant is agreeing to forfeit, are subject to forfeiture as property used or intended to be used in any manner or part to commit or to facilitate the commission of the offenses to which Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear title to these assets to the United States, and to testify truthfully in any forfeiture proceeding.

PLEA AGREEMENT - 35

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement. Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

16.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $300 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

17.    Restitution

The United States and Defendant agree that restitution is required. 18 U.S.C. §§ 2259, 3663, 3663A, 3664. Defendant acknowledges that restitution is mandatory, without regard to Defendant's economic situation, to identifiable victims who suffer ongoing injury by virtue of child pornography images depicting them circulating on the Internet indefinitely, in amounts that comport with Defendant's relative role in the causal process that underlies the general losses of the victims. *Paroline v. United States*, 572 U.S. 464 (2014); 18 U.S.C. § 2259.

Pursuant to 18 U.S.C. § 3663(a)(3), in exchange for the United States dismissing counts and/or agreeing not to bring additional charges, Defendant voluntarily agrees to pay restitution to all victims of child pornography that

PLEA AGREEMENT - 36

Defendant distributed, received, and/or possessed, as set forth in the discovery in this case, whether or not Defendant pleads guilty to counts charging that specific conduct, and whether or not such counts are foregone pursuant to this Plea Agreement.

Defendant understands that for purposes of 18 U.S.C. § 2259, "victim" means the individual harmed as a result of a commission of the crime, including, in the case of a victim who is under 18 years of age, the legal guardian of the victim.  The United States and Defendant also hereby stipulate and agree that the Court shall order full restitution, as appropriate, to any entity, organization, insurance company, individual, and/or medical provider who provided medical services and/or funds related to the treatment of any victim. Defendant agrees that the Court should order restitution in an amount that reflects Defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000 per victim.

With respect to restitution, the United States and Defendant agree to the following:

      a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that the Court should order restitution in an amount to be determined at or before sentencing to Minor 1, Minor 2, and/or any other identified victims of the offense conduct, and that interest on this restitution amount, if any, should be waived.

      b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances.  18 U.S.C. § 3664(f)(2), (3)(A).  Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

//

PLEA AGREEMENT - 37

    c.  Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

    d.  Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial

PLEA AGREEMENT - 38

Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

//

//

PLEA AGREEMENT - 39

18.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

19.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

20.    AVAA Special Assessments

Defendant understands that Defendant will be required to pay a mandatory special assessment of no more than $50,000, pursuant to the Amy, Vicky and Andy Child Pornography Victim Assistance Act of 2018.

21.    Sex Offender Registration

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender

PLEA AGREEMENT - 40

registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies.

Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement.

As a condition of Supervised Release, Defendant shall initially register with the state sex offender registration of the state of Defendant's release and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of release.

22.    Waiver of Appeal Rights

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any and all aspects of Defendant's conviction and/or the sentence the Court imposes, on any and all grounds, including venue, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement. Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement or indicates its intent to do so.

PLEA AGREEMENT - 41

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

//

//

PLEA AGREEMENT - 42

23.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b.    The United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

24.    Waiver of Attorney Fees and Costs

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105- 119 (Nov. 26, 1997), to recover attorneys'

PLEA AGREEMENT - 43

fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

25.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Deputy Attorney General of the United States

_____          02/05/2026
Laurel J. Holland                                        Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No

PLEA AGREEMENT - 44

other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____Amdrawr Otto_____    _2-6- 26_
Andrew Steven Otto                          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____Serguel Akiti_____    _02/05/2026_
Serguel Akiti                               Date
Attorney for Defendant

_For Randi Johnson_____    _02/05/2026_
Randi L. Johnson                          Date
Attorney for Defendant

PLEA AGREEMENT - 45